UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
NAILAH FERNANDES,

                Plaintiff,

        v.

FAMILY COURT OF NASSAU COUNTY et al.,

                Defendants.

-----------------------------------------------------------------X

**MEMORANDUM
AND ORDER**
25-CV-2640-SJB-JMW

**BULSARA, United States District Judge:**

Plaintiff Nailah Fernandes filed this pro se action against the Family Court of Nassau County, the Family Court of Queens County, two Family Court Judges (Judge Ellen R. Greenberg and Judge Elenor Chong Reid Cherry), the Nassau County Department of Social Services, Nancy Nunziata, Anthony White, and Officer Cesar Lamb-Tavarez.  (Compl. filed May 9, 2025, Dkt. No. 1).  Fernandes asserts various claims arising from her child custody cases in state court.  (*Id.* ¶¶ 21–95).  The Family Court of Nassau County, the Family Court of Queens County, Judge Greenberg, and Judge Cherry (collectively, the "Appearing Defendants") have moved to dismiss Fernandes's claims against them.  For the reasons explained below, the motion is granted.

STANDARD OF REVIEW

I.     **12(b)(1) Standard**

"A motion to dismiss an action under [Rule 12(b)(1)] raises the fundamental question of whether the federal district court has subject matter jurisdiction over the action before it[.]"  5B Charles Alan Wright & Arthur R. Miller et al., Federal Practice

and Procedure § 1350 (4th ed.). "In resolving a motion to dismiss under Rule 12(b)(1), the district court must take all uncontroverted facts in the complaint (or petition) as true, and draw all reasonable inferences in favor of the party asserting jurisdiction." *Collins v. United States*, 996 F.3d 102, 105 n.1 (2d Cir. 2021) (quotation omitted). "[T]he plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence, and [w]here jurisdictional facts are placed in dispute, the court has the power and obligation to decide issues of fact by reference to evidence outside the pleadings, such as affidavits." *Allco Fin. Ltd. v. Roisman*, No. 22-2726, 2023 WL 4571965, at *1 (2d Cir. July 18, 2023) (quotations omitted). "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Nike, Inc. v. Already, LLC*, 663 F.3d 89, 94 (2d Cir. 2011) (quotation omitted), *aff'd*, 568 U.S. 85 (2013).

## II.      12(b)(6) Standard

"To survive a motion to dismiss [pursuant to Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A complaint must contain more than "naked assertion[s] devoid of further factual enhancement." *Id.* (quotations omitted). In other words, a plausible claim contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*; Fed. R. Civ. P. 8(a)(2). "Factual allegations must be enough to raise a right to relief above the

2

speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)[.]"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted).  The determination of whether a party has alleged a plausible claim is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Iqbal*, 556 U.S. at 679.

This pleading requirement "does not impose a probability standard at the motion-to-dismiss stage."  *Mosaic Health, Inc. v. Sanofi-Aventis U.S., LLC*, 156 F.4th 68, 77 (2d Cir. 2025) (noting that plausibility does not equate to probability).  And "on a Rule 12(b)(6) motion it is not the province of the court to dismiss the complaint on the basis of the court's choice among plausible alternatives.  Assuming that [plaintiff] can adduce sufficient evidence to support its factual allegations, the choice between or among plausible interpretations of the evidence will be a task for the factfinder."  *Id.* (quotations omitted).

For the purpose of this motion, the Court is "required to treat" the Plaintiff's "factual allegations as true, drawing all reasonable inferences in favor of [Plaintiff] to the extent that the inferences are plausibly supported by allegations of fact."  *In re Hain Celestial Grp., Inc. Secs. Litig.*, 20 F.4th 131, 133 (2d Cir. 2021).  The Court "therefore recite[s] the substance of the allegations as if they represented true facts, with the understanding that these are not findings of the court, as we have no way of knowing at this stage what are the true facts."  *Id.*

Because Fernandes is proceeding pro se, the Court construes her Complaint "to raise the strongest claims [it] suggest[s]."  *Sharikov v. Philips Med. Sys. MR, Inc.*, 103 F.4th

3

159, 166 (2d Cir. 2024).  However, her pro se status does not permit the Court to read

into her "submissions claims that are not consistent with [her] allegations, or arguments

that the submissions themselves do not suggest."  *Triestman v. Fed. Bureau of Prisons*, 470

F.3d 471, 477 (2d Cir. 2006) (quotation omitted).

<u>FACTUAL BACKGROUND AND PROCEDURAL HISTORY</u>

Fernandes filed this lawsuit on May 9, 2025, asserting a series of claims based on

her state court child custody proceedings.  In June 2023, the Queens County Family

Court issued an order that Fernandes's minor child, M.F., be removed from her custody.

(Compl. ¶¶ 21–22).  Fernandes alleges that order was based on false statements of

Anthony White, M.F.'s father, to the Queens County Family Court, and that she never

received proper notice of the proceedings.  (*Id.* ¶¶ 22–23).  During the proceedings,

Fernandes was "overwhelmed and unable to speak due to trauma and fear" but "no

accommodations were made."  (*Id.* ¶ 25).  Fernandes alleges that Judge Cherry, who

presided over the proceedings, failed to acknowledge or respond to issues "regarding

lack of service or the manner in which [M.F.] was forcibly removed."  (*Id.* ¶ 26).

Subsequently, Fernandes participated in custody hearings relating to M.F. in

Nassau County Family Court.  (*Id.* ¶ 28).  She alleges that throughout these proceedings,

she "was subjected to intimidation and was denied the support of her mother or any

other supportive individual," (*id.* ¶ 29), and that "[d]ue to her disability and the

intimidating nature of the proceedings, [she] was often unable to effectively

communicate," (Compl. ¶ 30).  She alleges that her disabilities and accommodation

needs were brought to the attention of Judge Greenberg, who "ignored these issues and

4

failed to provide reasonable accommodations." (*Id.* ¶ 31). Around February 2025, Fernandes, a member of the Nigvwasdv Itsudalegi Aniyunwiya Tribe, sought assistance from the tribe, and the Tribal Court issued a Tribal Order of Removal. (*Id.* ¶¶ 45–46). Judge Greenberg summarily denied the Tribal Order of Removal and continued to exercise jurisdiction over the custody proceedings. (*Id.* ¶ 49).

During a March 13, 2025 hearing in the Nassau County Family Court, Fernandes fainted and an ambulance was called. (*Id.* ¶ 32). Fernandes alleges that the court determined custody while she was awaiting medical attention at the hospital, (*id.* ¶ 37), and that Judge Greenberg awarded custody to Anthony White without allowing Fernandes to present her case, (Compl. ¶ 36). As a result, Fernandes lost custody of M.F. and is subject to "severely restricted visitation and telephone contact, leading to a significant deterioration in her relationship with [M.F.]." (*Id.* ¶ 38).

Fernandes asserts claims against the Appearing Defendants for: violation of her Due Process Rights under the Fourteenth Amendment, (*id.* ¶¶ 71–79);[1] negligent infliction of emotional distress, (*id.* ¶¶ 89–95); and violation of Title II of the Americans with Disabilities Act ("ADA"), (*id.* ¶¶ 59–70).[2] Fernandes seeks a variety of relief,

---

[1] The Court liberally construes Fernandes's Complaint as asserting her Fourteenth Amendment claim pursuant to 42 U.S.C. § 1983.

[2] Fernandes also alleges that Defendants "violated established federal law requiring deference to tribal courts and exhaustion of tribal remedies." (Compl. ¶ 57). While Fernandes cites some Supreme Court cases generally discussing tribal exhaustion, (*id.* ¶¶ 52–56), the Court finds no private right of action that enables Fernandes to bring these claims. To the extent Fernandes seeks to invoke the Indian Child Welfare Act ("ICWA"), nothing in her Complaint suggests ICWA would apply here—ICWA provides for exclusive tribal jurisdiction only for children in federally recognized tribes who reside on a reservation. *See* 25 U.S.C. §§ 1903(4), 1903(8), 1911(a).

including: (1) a declaratory judgment that Defendants violated federal law by "refus[ing] to honor the Tribal Order of Removal," violated the ADA by "fail[ing] to provide reasonable accommodations" during the proceedings, and violated Fernandes's due process rights under the Fourteenth Amendment; (2) a preliminary and permanent injunction requiring Defendants to honor the Tribal Order of Removal and transfer all proceedings to the Tribal Court, cease all state court proceedings involving Fernandes and M.F. until tribal remedies have been exhausted, implement policies to ensure compliance with the ADA in future proceedings, and return M.F. to Fernandes's custody; and (3) compensatory damages for physical and emotional harm.  (Compl. at 16).  The Appearing Defendants seek dismissal of these claims.  (Defs.' Mem. in Supp. of Mot. to Dismiss dated Aug. 12, 2025 ("Defs.' Mot. to Dismiss"), Dkt. No. 15-1).  For the reasons explained below, the motion is granted.

DISCUSSION

## I.      *Rooker-Feldman* **and** *Younger* **Abstention**

The *Rooker-Feldman* doctrine "goes to subject matter jurisdiction" and "bars a party losing in state court . . . from seeking what in substance would be appellate review of the state judgment in a United States district court."  *Gerken v. Gordon*, No. 24-3336, 2025 WL 2847429, at *1 (2d Cir. Oct. 8, 2025) (quoting *Hunter v. McMahon*, 75 F.4th

6

62, 66 (2d Cir. 2023)).[3] *Rooker-Feldman* applies if the following four requirements are met: "(1) the federal-court plaintiff lost in state court; (2) the plaintiff complains of injuries caused by a state court judgment; (3) the plaintiff invites review and rejection of that judgment; and (4) the state judgment was rendered before the district court proceedings commenced." *Id.* (quoting *Hunter*, 75 F.4th at 68).

While *Rooker-Feldman* applies to review of final state court judgments, *Younger* abstention applies to ongoing state court proceedings. *See Hunter,* 75 F.4th at 67 ("*Rooker-Feldman* applies only after state-court proceedings have 'ended.'" (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 291 (2005))); *Finnan v. Ryan*, 357 F. App'x 331, 333 (2d Cir. 2009) (disagreeing with *Rooker-Feldman* dismissal but concluding "Plaintiff's claims . . . nonetheless must be dismissed pursuant to [*Younger* abstention], which requires federal courts to abstain from taking jurisdiction over federal constitutional claims that involve or call into question state proceedings"). "*Younger* abstention doctrine provides that 'federal courts should generally refrain from enjoining or otherwise interfering in ongoing state proceedings.'" *Weiss v. New York*, No. 22-2326, 2024 WL 2837623, at *2 (2d Cir. June 5, 2024) (quoting *Spargo v. N.Y. Comm'n on Jud. Conduct*, 351 F.3d 65, 74 (2d Cir. 2003)). "*Younger* abstention applies to

---

[3] The Court first addresses *Rooker-Feldman* doctrine and *Younger* abstention because each implicates the Court's subject matter jurisdiction. Because of the ambiguity as to the status of the state court proceedings, the Court proceeds to address immunity defenses as alternate bases for dismissal, recognizing that while sovereign immunity is jurisdictional, *see Baroni v. Port Auth. of N.Y. & N.J.*, 161 F.4th 48, 54 (2d Cir. 2025), judicial immunity is a merits-based dismissal, *see Butcher v. Wendt*, 975 F.3d 236, 241 (2d Cir. 2020) ("Because [Plaintiff's] claims . . . are barred by absolute judicial immunity, they were correctly dismissed under Rule 12(b)(6).").

7

(1) state criminal prosecutions, (2) civil enforcement proceedings akin to criminal prosecutions, and (3) civil proceedings that implicate a state's interest in enforcing the orders and judgments of its courts." *Id.* Like the *Rooker-Feldman* doctrine, "[w]hen *Younger* applies . . . [it] deprives the federal court of jurisdiction in the matter." *Id.* (quotation omitted).

Here, it is not clear whether the underlying state court proceedings ended or remain ongoing. (*See* Compl. at 16 (requesting the Court order the state proceedings "[c]ease" and be "transfer[red]" to Tribal Court); Defs.' Mot. to Dismiss at 15 ("[I]t is unclear whether the custody proceedings remain active[.]")). Either way, the Court lacks jurisdiction. To the extent the state court proceedings are final, i.e., judgment was entered, and Fernandes did not appeal, the Court lacks jurisdiction to hear her claims under *Rooker-Feldman*. To the extent that the state court proceedings remain ongoing, *Younger* requires abstention and deprives the Court of jurisdiction.

While it is unclear whether the state court proceedings had ended when Fernandes filed her Complaint, her Complaint satisfies the other three requirements of *Rooker-Feldman*. First, she lost in state court—her Complaint alleges that the court awarded custody to M.F.'s father and forcibly removed M.F. from her custody. Second, she complains of injuries caused by the state court judgment—including her loss of custody of M.F., (Compl. ¶¶ 38, 69, 79); restricted visitation and telephone contact, (*id.* ¶ 38); and emotional distress from her separation from M.F., (*id.* ¶¶ 94–95). And lastly, she invites review and rejection of the state court judgment—she seeks injunctive relief that in essence asks this Court to reverse Judge Greenberg's decisions. (*See id.* at 16

8

(requesting that the Court "[i]ssue a preliminary and permanent injunction ordering Defendants to . . . [i]mmediately honor the Tribal Order of Removal and transfer all proceedings involving Ms. Fernandes and [M.F.] to the Royal Tribal Supreme Consular Court Indian Offenses . . . [and r]eturn [M.F.] to [her custody] pending the outcome of tribal court proceedings")); *e.g.*, *Gerken,* 2025 WL 2847429, at *2 ("[T]o the extent that the family court proceedings had entirely concluded and Gerken sought review and rejection of the child support order, all four requirements were satisfied.  Gerken had lost in state court, complained of the injuries caused by the child support order, explicitly asked the district court to review and reject that order, and the order was entered before he commenced this action.").

To the extent any of the proceedings were ongoing when Fernandes filed her Complaint here, *Younger* abstention deprives the Court of jurisdiction.  Fernandes's allegations are based on underlying custody proceedings in state court, and *Younger* abstention applies to child custody proceedings.  *See Bukowski v. Spinner*, 709 F. App'x 87, 88 (2d Cir. 2018) ("[F]ederal-court abstention is required under [*Younger*], insofar as Bukowski seeks declaratory or injunctive relief that would interfere with a '[s]tate court's ability to perform its judicial function in . . . [an ongoing] custody proceeding[].'" (quoting *Falco v. Justs. of the Matrim. Parts of Sup. Ct. of Suffolk Cnty.*, 805 F.3d 425, 428 (2d Cir. 2015))); *Thayer v. Vt. Dep't of Child. & Fams.*, No. 24-0485, 2025 WL 314787, at *3 (2d Cir. Jan. 28, 2025) ("[T]he district court correctly identified Thayer's post-judgment proceedings challenging the termination of her parental rights as an 'ongoing proceeding' for which *Younger* abstention is required.").  Fernandes's claims—

9

to the extent that her state custody proceedings are ongoing—ask this Court to interfere with those proceedings.  Fernandes asks this Court to grant declaratory and injunctive relief compelling the state court to take certain actions in her child custody proceedings—*Younger* prohibits this Court from doing so.  *See, e.g., Roldan v. Fam. Ct. of City of N.Y.*, No. 25-CV-4594 , 2025 WL 2536740, at *10–*11 (S.D.N.Y. July 2, 2025) (recommending denial of temporary restraining order because *Younger* required abstention where plaintiff alleged ADA and constitutional claims based on her ongoing state custody case), *report and recommendation adopted*, 2025 WL 2374878 (Aug. 15, 2025), *appeal dismissed sub nom., Roldan v. Waksberg*, No. 25-2116, 2026 WL 582304 (2d Cir. Jan. 8, 2026); *Fishman v. Off. of Ct. Admin. N.Y. State Cts.*, No. 18-CV-0282, 2020 WL 1082560, at *9–*12  (S.D.N.Y. Mar. 5, 2020) (dismissing plaintiff's claims for injunctive and declaratory relief relating to failure to provide disability accommodations in state court custody proceedings based on *Rooker-Feldman* and *Younger* abstention), *aff'd*, No. 20-1300, 2021 WL 4434698 (2d Cir. Sep. 28, 2021).[4]

Accordingly, the Court lacks jurisdiction to hear Fernandes's claims under *Rooker-Feldman* (to the extent the state proceedings are final) and under *Younger* abstention (to the extent any state proceedings remained ongoing at the time she filed this case).

---

[4] While there is an exception to *Younger* abstention in cases of "bad faith, harassment, or any other unusual circumstance that would call for equitable relief," *see Diamond "D" Const. Corp. v. McGowan*, 282 F.3d 191, 198 (2d Cir. 2002) (quoting *Younger v. Harris*, 401 U.S. 37, 54 (1971)), Fernandes has not alleged, in any non-conclusory way, any improper motive that could constitute bad faith or some other extraordinary circumstance.

## II.    Immunity

To the extent any of Fernandes's claims are not barred by *Rooker-Feldman* or *Younger* abstention, the Family Courts are entitled to immunity on all but the ADA claim, and Judge Greenberg and Judge Cherry are entitled to immunity on all claims.

### A.    Claims Against the Family Courts

The Eleventh Amendment generally bars suit in federal court "against a state or its agencies absent a waiver of immunity or congressional legislation specifically overriding immunity." *Mamot v. Bd. of Regents*, 367 F. App'x 191, 192 (2d Cir. 2010); *see also Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100–01 (1984) (noting immunity extends to both damages and injunctive relief); *see* U.S. Const. amend XI ("The Judicial power of the United States shall not be construed to extend to any suit . . . commenced or prosecuted against one of the United States[.]").  "Eleventh Amendment immunity 'extends beyond the states themselves to state agents and state instrumentalities that are, effectively, arms of a state.'" *Bythewood v. New York*, No. 22-2542, 2023 WL 6152796, at *1 (2d Cir. Sep. 21, 2023) (quoting *Gollomp v. Spitzer*, 568 F.3d 355, 366 (2d Cir. 2009)).  This immunity, though, is not inviolate.  States may waive their own immunity, or Congress may abrogate it pursuant to its Fourteenth Amendment power. *Beaulieu v. Vermont*, 807 F.3d 478, 483 (2d Cir. 2015).

The Nassau County Family Court and the Queens County Family Court are part of the New York State Unified Court System, which is entitled to sovereign immunity as an "arm of the state." *See Bythewood*, 2023 WL 6152796, at *1 ("The New York State Unified Court System is 'unquestionably an arm of the state' that shares in New York's

11

immunity to suit." (quoting *Gollomp*, 568 F.3d at 368)); *e.g.*, *McKnight v. Middleton*, 699 F. Supp. 2d 507, 521 (E.D.N.Y. 2010) ("The County of Kings Family Court is a part of the New York State Unified Court system and is, therefore, also protected by the State's sovereign immunity from suit in federal court."), *aff'd*, 434 F. App'x 32 (2d Cir. 2011); *Blanchard v. Doe*, No. 17-CV-6893, 2019 WL 2211079, at *4 (E.D.N.Y. May 22, 2019) ("The Nassau County Family Court, as a constituent court of the New York State Unified Court System, is an 'arm of the State' and protected from suit by Eleventh Amendment sovereign immunity.").

To the extent Fernandes asserts claims for violations of due process and negligent infliction of emotional distress against the Queens County Family Court and the Nassau County Family Court, these claims are barred by Eleventh Amendment sovereign immunity.[5] Such claims are understood to be brought pursuant to § 1983, which provides the exclusive federal remedy for violations of constitutional rights by state actors. *See Fenner v. City of New York*, 392 F. App'x 892, 893 (2d Cir. 2010) ("We have long held that when [42 U.S.C.] § 1983 provides a remedy, an implied cause of action grounded on the Constitution is not available." (quotation omitted)). It is well-established that Congress did not abrogate state sovereign immunity for § 1983 claims, *Mallet v. N.Y. State Dep't of Corr. & Cmty. Supervision*, 126 F.4th 125, 138 (2d Cir. 2025), and New York "has not consented to § 1983 suits in federal court," *Mamot*, 367 F. App'x at 192. Similarly, New York has not consented to being sued for tort claims, like

---

[5] Defendants concede that "[t]o the extent that Plaintiff asserts an ADA, Title II claim . . . the Eleventh Amendment would not apply." (Defs.' Mot. to Dismiss at 6 n.3).

negligent infliction of emotional distress, in federal court. *See Reaves v. City of New York*, No. 98-CV-5708, 1999 WL 34757074, at *4 (S.D.N.Y. Sep. 30, 1999) ("New York State has consented to be sued in tort, i.e. for personal injury and property damage, in the New York State Court of Claims—and only in the New York State Court of Claims."), *aff'd*, 213 F.3d 626 (2d Cir. 2000). Accordingly, as to the Family Courts, Fernandes's § 1983 claim and negligent infliction of emotional distress claim are barred by sovereign immunity.

### B.    Claims Against Family Court Judges

#### i.    Damages

Eleventh Amendment immunity also extends to "state officials sued in an official capacity." *Bell v. Kaleida Health*, No. 25-0366, 2025 WL 2938354, at *2 (2d Cir. Oct. 16, 2025). In addition, "[j]udges generally have absolute [judicial] immunity from suits for money damages for their judicial actions, but not for actions taken in an administrative, legislative, or executive capacity." *Kellogg v. Nichols*, -- F.4th --, No. 23-8093, 2025 WL 4482990, at *2 (2d Cir. Aug. 18, 2025) (per curiam) (quotation omitted). "[D]etermining whether an act by a judge is 'judicial,'" requires a "functional approach, for such immunity is justified and defined by the *functions* it protects and serves, not by the person to whom it attaches." *Id.* (quotation omitted). "The principal hallmark of the judicial function is a decision in relation to a particular case." *Id.* (quotation omitted). Accordingly, "acts arising out of, or related to, individual cases before the judge are considered judicial in nature." *Id.* (quotation omitted).

13

Fernandes asserts claims against Judge Greenberg and Judge Cherry in both their official and individual capacities.  (Compl. ¶¶ 9, 14).  Regardless of capacity, Judge Greenberg and Judge Cherry are entitled to immunity.  Eleventh Amendment immunity bars Fernandes's official capacity claims against Judge Greenberg and Judge Cherry for the same reason it bars Fernandes's claims against the Family Courts—New York has not waived, and Congress has not abrogated, its sovereign immunity for these claims.  As for the individual capacity claims, Judge Greenberg and Judge Cherry are entitled to judicial immunity.  Fernandes's claims against Judge Greenberg and Judge Cherry arise entirely out of her child custody proceedings before them and out of their judicial actions and decisions in those proceedings.  Fernandes identifies no actions by Judge Greenberg or Judge Cherry that were not judicial in nature.  Accordingly, to the extent Fernandes seeks damages against Judge Greenberg and Judge Cherry, they are entitled to judicial immunity.

### ii.  Declaratory and Injunctive Relief

In *Ex parte Young*, the Supreme Court recognized "'a narrow exception' to Eleventh Amendment immunity 'that allows certain private parties to seek judicial orders in federal court preventing state executive officials from enforcing state laws that are contrary to federal law.'"  *Unkechaug Indian Nation v. Seggos*, 126 F.4th 822, 829 (2d Cir. 2025) (quoting *Silva v. Farrish*, 47 F.4th 78, 84 (2d Cir. 2022)), *cert. denied*, No. 24-1240, 2025 WL 2823807 (Oct. 6, 2025).  To determine whether a case falls within *Ex parte Young*, "a court need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly

14

characterized as prospective." *Id.* (quoting *W. Mohegan Tribe & Nation v. Orange County*, 395 F.3d 18, 21 (2d Cir. 2004)).

Fernandes's requests for declaratory and injunctive relief do not fall into the exception outlined in *Ex parte Young*. As to declaratory relief, Fernandes asks that the Court declare that prior actions taken by Judge Greenberg and Judge Cherry violated her rights, requesting that the Court declare that "Defendants' refusal to honor the Tribal Order of Removal violates federal law," "Defendants' failure to provide reasonable accommodations to Ms. Fernandes during Family Court proceedings violates Title II of the Americans with Disabilities Act," and "Defendants' actions . . . violated Ms. Fernandes's due process rights under the Fourteenth Amendment." (Compl. at 16). This relief is retrospective, as it seeks a declaration that Judge Cherry and Judge Greenberg "violated [Fernandes's] federal rights through prior adverse rulings." *Bythewood*, 2023 WL 6152796, at *2. Accordingly, Judge Greenberg and Judge Cherry are entitled to judicial immunity on Fernandes's claims for declaratory relief. *See Triestman v. McGinty*, 804 F. App'x 98, 99 (2d Cir. 2020) ("[J]udicial immunity bars any claim for retrospective declaratory relief.").

As for the injunctive relief Fernandes seeks, Section 1983 provides that "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable." 42 U.S.C. § 1983. Fernandes has not alleged that Judge Greenberg or Judge Cherry "violated a declaratory decree or that declaratory relief was unavailable," so injunctive relief under § 1983 is unavailable.

15

*Treistman*, 804 F. App'x at 100.  The Court's denial of the specific declaratory relief Fernandes seeks here does not render declaratory relief "unavailable."  *See, e.g.*, *Brik v. McFarland,* No. 23-CV-3507, 2023 WL 4274268, at *4 (E.D.N.Y. June 29, 2023) ("The Court denies the plaintiff's specific request for declaratory relief as improper, but that does not mean that declaratory relief is unavailable as a general matter.") (collecting cases). Indeed, "declaratory relief against a judge for actions taken within his or her judicial capacity is ordinarily available by appealing the judge's order."  *Caldwell v. Pesce*, 83 F. Supp. 3d 472, 484 (E.D.N.Y. 2015), *aff'd,* 639 F. App'x 38 (2d Cir. 2016).  Accordingly, Judge Greenberg and Judge Cherry are entitled to judicial immunity from Fernandes's claims for declaratory and injunctive relief.[6]

## CONCLUSION

For the reasons explained above, Defendants' motion to dismiss is granted.  The Court dismisses Fernandes's claims against the Nassau County Family Court, the Queens County Family Court, Judge Greenberg, and Judge Cherry.  Except for the ADA claim, leave to amend is denied, as repleading cannot cure the defects identified.  *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) ("The problem with Cuoco's causes of action is substantive; better pleading will not cure it.  Repleading would thus be

---

[6] As for the ADA claim, although Congress has abrogated sovereign immunity for certain Title II claims under the ADA, Judge Cherry and Judge Greenberg are nonetheless entitled to judicial immunity on this claim, as it pertains to decisions made during cases before them.  To the extent Fernandes asserts this claim against the Family Courts, she fails to state a claim under the ADA, because "she fails to specify the precise nature of her condition or explain how it 'substantially limited any major life activity,'" which is required to demonstrate that she is a "qualified individual with a disability" under the ADA.  *See, e.g.*, *Roldan*, 2025 WL 2536740, at *12–*13.

futile."). Fernandes is granted leave to amend her Complaint to cure the deficiencies in her ADA claim against the Nassau County Family Court and the Queens County Family Court. Fernandes may not reassert this claim against Judge Cherry and Judge Greenberg, who are entitled to judicial immunity. The Clerk of Court is respectfully directed to remove Judge Cherry and Judge Greenberg from the docket. Any amended complaint must be filed by **April 24, 2026** and must also specify the date on which the state court proceedings concluded, and whether Fernandes appealed any state court judgment. Except for the ADA claim, any amended complaint may not reallege claims that have been dismissed against the Defendants who are the subject of this Order.

SO ORDERED.

*/s/ Sanket J. Bulsara*
SANKET J. BULSARA
United States District Judge

Date: March 25, 2026
Central Islip, New York

17